UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYRALL COLEMAN-NORMAN, as Independent Administrator of the Estate of NORMAN THOMAS, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-03984 |
| RIVER OAKS CENTER, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

### DEFENDANTS' OPPOSED MOTION TO DISMISS
### COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, RIVER OAKS REALTY, LLC; RIVER OAKS CH, LLC; RIVER OAKS NASSIM, LLC; NAMDAR REALTY GROUP, LLC; CH CAPITAL GROUP, LLC; MASON ASSET MANAGEMENT, INC.; and NAMCO REALTY, LLC (collectively the "Defendants"), by and through their attorneys, Donald G. Machalinski, Linda J. Schneider, and Timothy M. Ravich of Tressler LLP, move for entry of an order dismissing the Complaint at Law ("Complaint") [Docket Entry No. 1], filed by the Plaintiff, Syrall Coleman-Thomas, as Independent Executor of the Estate of Norman Thomas, deceased (the "Plaintiff"), as follows:

This lawsuit arises out of an incident that occurred at the River Oaks Center shopping mall (the "Mall") in Calumet City, Illinois in November 2022, when a security officer, Norman Thomas ("Mr. Thomas"), was fatally shot during an armed robbery of a tenant in the Mall for whom Mr. Thomas was employed to provide security services. *Complaint*, ¶¶ 2, 19, 25-29. Plaintiff, as independent administrator of the estate of Mr. Thomas, has sued each of the Defendants in two counts

sounding in negligence—wrongful death and survival action. Dismissal is warranted for three reasons, however:

- None of the Defendants owe any duty to Mr. Thomas for the criminal acts of third persons as a matter of law;

- Liability cannot lie against defendants who, as here, are solely members of LLCs for their LLC's alleged actions or omissions; and

- Several of the Defendants had no connection to the Mall, be it as an owner or operator with any role to play in the maintenance, control, lease, and possession of the Mall, and so owed no duty to the Plaintiff as a matter of law.

Hence, for several independent and overlapping reasons, Plaintiff has failed to state any claim upon which relief can be granted against any of the Defendants.

As to the threshold issue of duty, Plaintiff's pleading fails as against *all* the Defendants as a matter of law, specifically under the binding precedent of *Rowe v. State Bank of Lombard*, 531 N.E. 2d 1358 (Ill. 1998), in which the Supreme Court of Illinois held that property owners and managers have no legal duty to protect their tenants—or those on the premises with the tenant's consent (such as Mr. Thomas in this case)—from criminal activity, including foreseeable criminal activity, on the premises. *Rowe* controls here where the operative pleading alleges in conclusory terms that each of the Defendants had but breached a duty on the mere basis that each allegedly "owned, operated, managed, maintained, and/or controlled the Mall." *Complaint*, ¶¶ 4, 6, 8, 10, 12, 14, 16, 18. Taking these allegations as true for purposes of this motion to dismiss, none of the Defendants owed any duty to Mr. Thomas (and thus to Plaintiff, on his behalf) and the Complaint should be dismissed as legally insufficient under *Rowe*.

Second, Plaintiff's lawsuit against one of the Defendants specifically—Namco Realty, LLC ("Namco")—is barred by the Illinois Limited Liability Company Act. Namco is a member of Defendant, River Oaks Realty, LLC ("Realty"), but has no other connection to the Mall. As such, Namco is not liable to Plaintiff under Illinois statutory law because members of limited liability

2

companies are not personally liable for the liabilities of the limited liability companies of which they are a member solely by reason of being or acting as a member or manager of the limited liability company. *See* 805 ILCS 180-10/10 ("liabilities … of a limited liability company … in tort … are solely the obligations, and liabilities of the company.").

Last, at all material times, three of the Defendants—CH Capital Group, LLC ("CH Capital"), Mason Asset Management, Inc. ("Mason"), and Namco—did not own, operate, manage, maintain, control, lease, and/or possess the Mall as a matter of fact. Having no connection to the Mall, these Defendants owe no duty to Plaintiff as a matter of law. *See*, *e.g.*, *Kim v. Simon Property Group, Inc.*, 2022 WL 1266433 (N.D. Ill. 2022).

## FACTUAL BACKGROUND

During the afternoon of November 16, 2022, three armed men allegedly entered the River Oaks Center mall and robbed a tenant in the Mall, a jewelry store, Areesha, LLC d/b/a John's Flawless Diamond. *Complaint*, ¶ 28. Mr. Thomas, an employee of Allied Universal Security providing security services for the jewelry store, was fatally shot during the crime. *Id*. ¶¶ 25, 28-29.

On April 11, 2024, Plaintiff instituted this lawsuit against each of the Defendants in Illinois state court in two counts, one for "Negligence—Wrongful Death" and "Negligence—Survival Action."[1] (The Defendants timely removed to this Court on diversity of citizenship grounds.) The allegations against the Defendants are identical, averring that each "owned, operated, managed, maintained and/or controlled the Mall." *Id*. ¶¶ 4, 6, 8, 10, 12, 14, 16, 18. The Complaint also states

---

[1] The Complaint features 16 separate counts, each with substantively identical, copied-and-pasted paragraphs numbered 1 through 33, with subparts. Confusingly, Count II contains two sets of paragraphs identified by the same numbers. Count VI jumps from paragraph 31 to paragraph 34; Count VIII jumps from paragraph 31 to paragraph 36, and so on. To avoid further disorder, for purposes of this motion a reference to any one paragraph in the Complaint is a reference to all paragraphs so numbered.

3

that "at least three other instances of gun violence at the Mall." *Id.* ¶¶ 21-24. Further, as against each of the Defendants, Plaintiff recycles a list of ten acts or omissions relating to the provision of security, security training, risk mitigation associated with gun violence and so forth that, according to Plaintiff, each of the Defendants, "by and through its employees and/or agents, was guilty." *Id.* ¶ 31 (a)-(j).

## ARGUMENT

### I.  THE DEFENDANTS OWE PLAINTIFF NO DUTY AS A MATTER OF LAW

Plaintiff has stated no claim against *any* of the Defendants because no duty exists for property owners or managers to protect others from criminal activity by third persons at the Mall absent a "special relationship" between the parties. *Rowe*, 531 N.E.2d at 1360. *See also Gilley v. Kiddel*, 865 N.E. 2d 262 (Ill. 2d Dist. 2007) (citing *Rowe* and explaining that the rationale for landlord immunity is that the lease conveys control of the property, which is a prerequisite to tort liability, to a tenant).

Here, the Complaint alleges in conclusory terms that each of the Defendants "owed a duty to [Mr. Thomas] and all individuals lawfully present at the Mall to provide a reasonably safe place for its customers, including providing customers with adequate security from violent crimes and gun violence." *Complaint*, ¶ 30. Mr. Thomas was not a customer at the mall, however, and under *Rowe*, the duty alleged by Plaintiffs simply does not exist; the Defendants owed no duty and so can have no liability to Mr. Thomas as a matter of law.

Indeed, *Rowe*, a decision of the Supreme Court of Illinois, is dispositive here—both generally and as to the specific and material element of duty. There, two employees were attacked by a former employee who gained access using unaccounted for keys, and then shot, while they were working at a large office park. 531 N.E.2d at 1360. One of the employees was killed. *Id*. Suit for personal injuries and wrongful death was filed against the several companies that

collectively owned and managed the office park (including a prior owner), along with a managing agent and the developer. *Id*. Like here, the *Rowe* lawsuit alleged that the defendants had a duty to protect the decedent while she was on the premises of the office park from "criminal or tortious attacks by intruders or other third persons" and that this duty was breached by, *inter alia*, failure of the property owner and manager to warn of prior criminal incidents that had been reported at the office park and to provide adequate security on the premises. *Id*. The lawsuit further alleged that as a proximate result of a failure by the office park's owner and manager to provide the necessary security measures or adequate warnings, the assailant was allowed to enter onto the premises where he shot and killed the decedent. *Id*. at 1361.

On the foregoing factual record, the Supreme Court of Illinois held, as a matter of law, that the property owner and manager had no legal duty to protect tenants, including "those on the premises with the tenant's consent, for foreseeable criminal activity on the premises." *Id*. at 1364. The *Rowe* court explained that "there is no duty requiring a landowner to protect others from criminal activity by third persons on his property absent a 'special relationship' between parties." *Id*. Moreover, the *Rowe* court reasoned that while a "special relationship" exists in certain contexts such as innkeeper and guest and business invitor and invitee, "this court has repeatedly held that the simple relationship between a landlord and a tenant, or a landlord and those on the premises with the tenant's consent, is not a 'special" one imposing a duty to protect against the criminal acts of others." *Id*.

The result reached in *Rowe* should obtain here for the same reasons. As in *Rowe*, Plaintiff here has described each of the Defendants as the owner and manager of a particular property—averring that each, individually and/or collectively "owned, operated, managed, maintained, and/or

controlled the mall."[2] *Complaint*, ¶¶ 4, 6, 8, 10, 12, 14, 16, 18. Consequently, under the authority of *Rowe*, none of the Defendants owed a duty to protect Mr. Thomas from criminal acts of third persons committed on the premises either in general or merely because they owned, managed, etc. the mall. *Id*. ("In the absence of a showing from which the court could infer the existence of a duty, no recovery by a plaintiff is possible as a matter of law …").

In addition, no special relationship is alleged. Indeed, Mr. Thomas was not a tenant and he was not at the Mall at the request or invitation of any of the Defendants, but rather as part of his employment with a security firm hired by a tenant of the Mall, John's Flawless Diamonds. In this respect, *Rowe* holds that "the simple relationship between a landlord and tenant, ***or a landlord and those on the premises with the tenant's consent***, is not a 'special' one imposing a duty to protect against the criminal acts of others." *Rowe*, 531 N.E.2d at 1364. (Emphasis added.) ("Whether under the facts of a case there is a relationship between the parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court."). Here, Mr. Thomas was on the premises with a tenant's consent. *A fortiori*, Mr. Thomas was on the tenant's premises at the tenant's request. He was paid to be there, according to the Complaint. Therefore, he had no relationship, let alone a "special" one that created any duty flowing from the Defendants to him.

Significantly, too, the Complaint nowhere asserts that Defendants voluntarily assumed a duty or obligation to provide security services; exercised control over the jewelry store space in which the robbery occurred; or was the only party in a position to guard against the robbery. In

---

[2] The allegations of mall ownership and operation is untrue as to certain of the Defendants. See Part III, *infra*. For example, Defendant River Oaks Center, LLC has previously advised the Court that it "has no affiliation with, connection to or involvement with the Mall, and specifically at all relevant times Center did not own, operate, manage, maintain and/or control the Mall as alleged in paragraph 4 in Plaintiff's Complaint. *See* Notice of Removal, D.E. No. 1, ¶ 20.

fact, on its face, the Complaint makes clear that the opposite is true—Mr. Thomas himself was employed by a security firm for the specific (and exclusive) purpose of "providing security for JOHN'S FLAWLESS DIAMONDS." *Complaint*, ¶ 25. As such, the Complaint admits that a tenant of the Mall, the jewelry store, not any of the Defendants, assumed the duty of safeguarding *its* customers and property in *its* leasehold.

What is more, the allegation that Mr. Thomas was an employee of a security firm (*id*. ¶ 25) reflects the fact that Mr. Thomas and his employer provided security against violent crime and gun violence within the Mall; that Defendants had no role to play in the training of an employee of a security firm unaffiliated with them; that Mr. Thomas and his employer had a system in place to monitor or report crime; and that Mr. Thomas and his employer voluntarily put themselves in a position of risk. Given this, Plaintiff's allegations against the Defendants, if taken to the logical conclusion, would have the perverse effect of imposing liability on landlords in the absence of their voluntary assumption or undertaking to provide security measures, turning mall owners and managers into de facto insurers of security firms and their employee security officers. That is not the law and runs counter to *Rowe*, which establishes that the law imposes no duty on the Defendants in this matter on the facts alleged.

Finally, *Rowe* clarifies that allegations of previous instances of criminal activity at the Mall (*see Complaint*, ¶¶ 21-24) do not justify the imposition of a duty here. *Id*. Therefore, Plaintiff's allegations of prior instances of crime at the Mall are not sufficient to support the duty element. *Complaint*, ¶¶ 21-24. *See Trice v. Chicago Housing Authority*, 302 N.E.2d 207 (Ill. App. Ct. 1977) ("[R]ather [foreseeability] defines and limits the scope of a pre-existent duty that is based on the relationship of the parties."). Dismissal, with prejudice, is warranted here under the weight of *Rowe*'s precedent and its progeny, therefore.

7

**II.     THE LAW BARS LIABILTY OF MEMBERS AND MANAGERS OF LLCs**

While the foregoing suffice as grounds to dismiss this lawsuit as against *all* of the Defendants, Plaintiff also has stated no claim against one of the Defendants specifically—Namco—pursuant to the Illinois Limited Liability Company Act, which provides that members of a limited liability company are not and cannot be liable for the alleged torts of the limited liability company of which they are a member or manager solely by reason of being or acting as a member or manager of the company. More specifically, 805 ILCS 180-10/10 ("Liability of members and managers"), states:

> … the obligations, and liabilities … of a limited liability company, whether arising in contract, tort, or otherwise, are solely, the … obligations, and liabilities of the company. **A member or manager is not personally liable for a … obligation, or liability of the company solely by reason of being or acting as a member or manager**.

(Emphasis added.) While Plaintiff has sued several limited liability companies in their own right (in futility, as described in Part I, above, and Part III, below), the foregoing statutory language bars Plaintiff's attempt to impose liability against individual *members* of an LLC, which are themselves limited liability companies, specifically Namco.

Here, Namco is a member of Realty (*see* Notice of Removal, D.E. No. 1, ¶ 14). Plaintiff alleges that Namco "owned, operated, managed, maintained, and/or controlled the Mall" (*Complaint*, ¶ 18) and that it "by and through its employees and/or agents was guilty of one or more of [several] negligent acts and/or omissions" (*id*. ¶ 31). These allegations are insufficient to state a claim, however, as they fail to assert any matters against Namco that are independent or distinguishable from the allegations against the LLCs of which it is a member, specifically Realty.

The Complaint also fails to present a single allegation of Namco's *own* wrongful acts or omissions giving rise to the felony-murder that occurred here. For example, the Complaint is

8

devoid of any factual allegation that Namco acted independently of, or in furtherance, of any act or omission by the LLC of which it is a member that caused or contributed to the events alleged. The lack of any such allegations is fatal to the Complaint as the unusual and extraordinary reasons that may justify a court's imposition of liability on a member of an LLC are not present here. *See, e.g.*, *Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585 (7th Cir. 2019) (holding that an attorney who was the owner of a title company used for several closings was not shielded from liability where he personally directed employees to conceal a fraud for his own personal gain).

The pleadings also are insufficient in that they fail to allege or indicate that Namco consented (in writing) or otherwise assumed the liability of the LLC of which it is a member—the only circumstances in which Namco could be liable under Illinois law. *See* 805 ILCS 180-10/10(d)(1)-(2) (establishing that "members of a limited liability company are liable in their capacity as members for … obligations, or liabilities of the company if: (1) a provision to that effect is contained in the articles of organization; and (2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision."). *See also In Re Baker*, 2022 WL 677455 (C.D. Ill. Bankr. 2022) ("Members and managers of limited liability companies are only liable for debts of the company if they have affirmatively accepted liability or if the limited liability veil of the company is pierced. Here, there is no allegation that the Debtor affirmatively agreed to be liable for [the LLC's] debts."). No such consent to, or assumption of, liability exists here, as alleged or in fact.

In all, Plaintiff's entire theory of liability against Namco is derivative in nature and thus fails to state a claim upon which relief can be granted. Plaintiff has sued Namco only by virtue of its status as a member of an LLC rather than as an active participant in any tortious action (or inaction) by the LLC of which it is a member. *See* 805 ILCS 180/5-1 ("A limited liability company

9

is a legal entity distinct from its members."). Because this is precisely the scenario that the Illinois Legislature had in mind when it codified the statutory shield for LLC members, and because Plaintiff has alleged no reason, and none of the reasons (*e.g.*, alter ego, fraud, undercapitalization, etc.) typically presented for piercing the corporate veil of a limited liability company to reach its members, this lawsuit should be dismissed as to Namco.

### III. SEVERAL DEFENDANTS HAVE NO CONNECTION TO THE MALL AND THUS NO LIABILITY AS A MATTER OF LAW

Finally, Plaintiff's allegation that three of Defendants—CH Capital, Mason, and Namco—"owned, operated, managed, maintained, and/or controlled the Mall," *Complaint*, ¶¶ 14, 16, 18, is simply incorrect.

As testified by Joseph Loloi, General Counsel for Namdar Realty Group with "personal firsthand knowledge regarding the ownership, operation, management and control of the shopping mall known as River Oaks Center," none of the above-referenced Defendants has any ownership interest in or authority to direct the activities of the Mall. *See* Exhibit A, Attorney Verification in Support of Defendants' Motion to Dismiss, attached hereto.[3] CH Capital is in the investment business, but does not have any ownership interest in the Mall. *Id*. ¶ 5. Mason is a real estate broker with no ownership interest in or management authority over property, including the Mall. *Id*. ¶ 6. Namco, too, is solely a member of defendant River Oaks Realty, LLC, but otherwise has no connection to the Mall. *Id*. ¶ 7. Lacking any connection to the Mall as a matter of undisputed fact, these Defendants owe no duty to Plaintiff as a matter of law, and this lawsuit should be dismissed as against them, a matter of law. *E.g.*, *Simon Property Group, Inc.*, 2022 WL 1266433,

---

[3] Fed. R. Civ. P. 12(d) specifically authorizes a court to receive extrinsic evidence from a defendant in a 12(b)(6) motion to dismiss, and if allowed, to convert the motion into a rule 56 motion for summary judgment. *E.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

at *1 (granting summary judgment in a premises liability suit where defendant had no ownership or control over a mall). *See also Hanna v. Creative Designers, Inc.*, 63 N.E.3d 1036 (Ill. 1st Dist. 2016) (collecting authority for the proposition that only the party in control of the premises can be held liable for a defective or dangerous condition on the premises).

**WHEREFORE**, the Defendants move for entry of an order dismissing this lawsuit under Fed. R. Civ. P. 12(b)(6), with prejudice, and granting such other and further relief deemed necessary and just.

TRESSLER LLP

*s/ Timothy M. Ravich*

Attorneys for the Defendants,
Donald G. Machalinski, Esq.
Linda J. Schneider, Esq.
Timothy M. Ravich, Esq.
Tressler LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606-6399
Telephone: 312.627.4000
dmachalinski@tresslerllp.com
lschneider@tresslerllp.com
travich@tresslerllp.com