UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYRALL COLEMAN-NORMAN, as Independent Administrator of the Estate of NORMAN THOMAS, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:24-cv-03984 |
| v. | ) ) | Honorable Martha M. Pacold |
| RIVER OAKS CENTER, LLC, et al., | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, RIVER OAKS REALTY, LLC; RIVER OAKS CH, LLC; RIVER OAKS NASSIM, LLC; NAMDAR REALTY GROUP, LLC; CH CAPITAL GROUP, LLC; MASON ASSET MANAGEMENT, INC.; and NAMCO REALTY, LLC (collectively the "Defendants"), by and through their attorneys, Donald G. Machalinski, Linda J. Schneider, and Timothy M. Ravich, of Tressler LLP, move for entry of an order dismissing the First Amended Complaint at Law ("Amended Complaint") [Docket Entry ["D.E."] No. 41, attached as Exhibit A, hereto], filed by the Plaintiff, Syrall Coleman-Thomas, as Independent Executor of the Estate of Norman Thomas, deceased (the "Plaintiff"), as follows:

**PRELIMINARY STATEMENT**

Plaintiff's "amended" complaint repeats nearly verbatim claims and legal issues comprehensively briefed, decided, and dismissed. Like the initial pleading, therefore, the Amended Complaint states no claim for which relief can be granted under the controlling authority of *Rowe v. State Bank of Lombard*, 531 N.E. 2d 1358 (Ill. 1998), or the plain language of the Illinois Limited Liability Company Act. The Court should again dismiss this lawsuit, but with prejudice.

The Amended Complaint avers in precisely the same language as the initial complaint that this lawsuit arises from a crime at the River Oaks shopping mall (the "Mall") in Calumet City, Illinois, in 2022. *Compare* D.E. No. 40, *Complaint at Law*, ¶¶ 2, 19, 25-29 *with* D.E. No. 41, *Am. Compl*. ¶¶ 2, 19, 28-32. At that time, a jewelry store, Areesha, LLC d/b/a John's Flawless Diamonds, was a tenant doing business in the Mall. *Compare* D.E. No. 40, *Complaint at Law*, ¶ 20 *with* D.E. No. 41, *Am. Compl*. ¶ 20. Then and there, the jewelry store employed a security company, Allied Universal Security, which in turn employed Norman Thomas ("Mr. Thomas") as a security guard to provide security services. *Compare* D.E. No. 40, *Complaint at Law*, ¶ 25 *with* D.E. No. 41, *Am. Compl*. ¶ 28. Mr. Thomas was fatally shot during an armed robbery inside the jewelry store on November 16, 2022. *Compare* D.E. No. 40, *Complaint at Law*, ¶¶ 28-29 *with* D.E. No. 41, *Am. Compl*. ¶¶ 31-32.

This Court dismissed these exact allegations consistent with *Rowe*, in which the Supreme Court of Illinois held that landlords do not owe a duty to protect tenants, or those on the premises with a tenant's consent, from foreseeable criminal activity absent a "special relationship." 531 N.E.2d at 215-16. "Because John's Flawless Diamonds operated a jewelry store inside the mall, John's Flawless Diamonds was a tenant of the Mall," this Court explained, and because "John's Flawless Diamonds was a tenant of the mall, Thomas was a person 'on the premises with the tenant's consent.'" *See* D.E. No. 42, *Transcript of Proceedings*, 8:22, 15:4-6.[1] Therefore, this Court has already once concluded, "[u]nder *Rowe* … defendants, the owners of the shopping mall, did not owe Thomas a duty to protect against criminal attacks by third parties." *Id*. at 15:6-8.

The Court also already ruled that Plaintiff's legal argument that the Mall being open to the public established a "special relationship" between Mr. Thomas and Defendants is legally incorrect under *Rowe* and other authorities. *Id*. at 11:1-3, 15:1-3.

---

[1] References are to the "Page:Line Number(s)" of the hearing transcript.

In fact, a substantial portion of the transcript of the hearing on Defendants' motion to dismiss Plaintiff's initial complaint is the Court's explanation of *Rowe*'s construction of "special relationship," including extensive quotation and discussion of Section 344, Restatement (Second) of Torts, upon which Plaintiff (and *Rowe*) relied. *Id*. 11:11-12 ("… this is a little bit long, but I'm going to read it in full because it's helpful."). *See id*. 10:5-25 through 15:1-3. Focusing on the phrase "and then only to those who come upon the land for the purpose for which it is thus held open to the public," this Court emphasized that Mr. Thomas was on the property (*i.e.*, the Mall) not at Defendants' invitation, but, as alleged, to provide security services at the request of John's Flawless Diamonds, Defendants' tenant. *Id*. at 13:13-25, 14:1-21 (citing *Jackson v. Shell Oil Co.*, 650 N.E. 2d 652 (Ill. App. Ct. 1995) to conclude that if an individual is on the land with the tenant's consent, the landowner does not owe that individual a duty to protect against the criminal acts of third parties; "the landlord is not an insurer and cannot be held liable to the tenant for harm done by every criminal intruder.").

Applying *Rowe*, the Court correctly ruled that "Thomas was not in a special business invitor-invitee relationship with defendants that would give rise to a duty to protect," hence, dismissal was appropriate. *Id*. at 10:14-16, 15:1-3.

Plaintiff was given leave to address the defects of her pleading, but she has not done so. The Amended Complaint is entirely repetitious of claims and legal theories already rejected and must be dismissed, therefore, as it states no claim for which relief can be granted. *Compare* D.E. No. 40, *Complaint at Law*, Counts I-XVI *with* D.E. No. 41, *Am. Compl*. Counts I-XVI. Plaintiff's recycled allegations affirm that under *Rowe*, Defendants had no duty to protect Mr. Thomas from foreseeable criminal activity at the Mall because: (1) Mr. Thomas was on the premises with the consent of a tenant of the Mall; and (2) he was on Mall premises for the purpose of providing security for that tenant, and thus had no "special relationship" with Defendants.

3

Similarly, the Amended Complaint continues to assert futile claims against certain of the Defendants. Plaintiff's claims against Namco Realty, LLC, in particular, is barred by the Illinois Limited Liability Company Act, 805 ILCS 180-10/10, as previously argued and again in Section II, below. Additionally, three of the Defendants—CH Capital Group, LLC, Mason Asset Management, Inc., and Namco—did not own, operate, manage, maintain, control, lease, and/or possess the Mall as a matter of fact, and therefore, owe no duty to Plaintiff as a matter of law, as detailed in Section III, below. *See*, *e.g.*, *Kim v. Simon Property Group, Inc.*, 2022 WL 1266433 (N.D. Ill. 2022).

## ARGUMENT

As a preliminary matter, while the Amended Complaint remains legally insufficient because it duplicates the failed claims set forth in the initial complaint, the pleading also is improper. First, as to its redundancy and inconsequential revisions, Plaintiff's latest pleading clones her previous one in substance and form. For example, each of the 16 counts contain identically numbered paragraphs—"1-32" and then "32-41"—resulting in 16 sets of the same content across more than 50 pages. Paragraph 39(c), (d), and (e) newly allege some speculative failures by Defendants, and Plaintiff amplifies gratuitous allegations mischaracterizing and damning Defendants' business intentions, however these matters, even if accepted under Fed. R. Civ. 12(b), are immaterial under *Rowe*. D.E. No. 41, *Am. Compl.* ¶¶ 21, 22, 39. (For purposes of this motion, a reference to any numbered paragraph in the Amended Complaint applies to all paragraphs with that same number.)

In any case, as with the initial complaint, the Amended Complaint admits that Mr. Thomas was on Mall premises with the consent of a tenant and for the purpose of providing security for that tenant. *Compare* D.E. No. 40, *Complaint at Law*, ¶¶ 25, 28 *with* D.E. No. 41, *Am. Compl.* ¶¶ 28, 31. That ends this lawsuit under *Rowe*.

Aware, Plaintiff has now deleted a phrase admitting why Mr. Thomas was at the Mall and added an allegation that Defendants "retained exclusive control of the parking lot and common areas of the Mall" before the date of the relevant crime. *See* D.E. No. 40, *Complaint at Law*, ¶¶ 27, 33-36. Manipulation of the pleadings in this manner is inappropriate.

An amended complaint ordinarily supersedes the original, but courts may reject amendments that attempt to erase prior admissions. *E.g.*, *In re Enron*, 370 B.R. 583, 598 (Bankr. S.D.N.Y. 2007). That is the case here as no doubt has ever existed—and none now exists—about when and where Mr. Thomas was victimized; it was not in a parking lot or common area of the Mall. Doubtless, too, is the admitted fact that Mr. Thomas's presence at the Mall was for the purpose of providing security services for a Mall tenant—not as a patron of the Mall. Plaintiff has never challenged these facts as incorrect or mistaken; she has actively advocated the opposite position, for example, when, in an attempt to destroy this Court's jurisdiction, she insisted that

> **Areesha, LLC d/b/a John's Flawless Diamonds owed a duty of reasonable care to the Decedent** in providing him a safe **workplace** and warning him of the potential dangers that existed **within the jewelry store**, that this Defendant breached that duty when it failed to take measures to ensure the Decedent's safety **inside the jewelry store**, and that this failure resulting [sic] in the untimely death of Norman Thomas.

D.E. No. 16, *Plaintiff's Motion to Add Non-Diverse Defendants*, ¶ 16. (Emphasis added.)

Plaintiff's isolated attempt to distance herself from a material, admitted, dispositive fact—that Mr. Thomas was not a patron at the Mall but a security guard hired to provide security for a tenant at the tenant's request—is improper and is an additional, if not primary, ground for dismissal here. *See In re Enron*, 370 B.R. at 599 ("had the Court been presented with the proposed amended complaint, in the context of a motion seeking leave to amend, it would not have granted leave … to omit the previous admissions … A different result should not obtain merely because the Court allowed the complaint to be amended …").

5

### I. DEFENDANTS OWE PLAINTIFF NO DUTY AS A MATTER OF LAW

Like her failed initial pleading, Plaintiff's Amended Complaint states no claim against any of the Defendants. The Illinois Supreme Court and "overwhelming majority of courts" have ruled that landlords do not owe a duty to protect tenants, or those on the premises with a tenant's consent, from foreseeable criminal activity absent a "special relationship." *Rowe*, 531 N.E.2d at 1360. Here, Mr. Thomas was at the Mall with a tenant's consent for the alleged purpose of providing security services for that tenant and he had no "special relationship" with Defendants under *Rowe*, which Plaintiff has admitted defeats this lawsuit. *See* D.E. No. 34, *Plaintiff's Response to Defendants' Motion to Dismiss*, at 6.

#### A. MR. THOMAS WAS AT THE MALL WITH THE CONSENT OF, AND FOR PURPOSES OF PROTECTING, A TENANT

Plaintiff repeats allegations that Defendants owed a duty to "all individuals lawfully present at the Mall to provide a reasonably safe place for its customers, including providing customers with adequate security from violent crimes and gun violence … and the foreseeable criminal acts of third parties which were facilitated by [Defendants]." *Am. Complaint*, ¶¶ 37-38. But Plaintiff nowhere alleges Mr. Thomas was a customer to whom a duty was owed under *Rowe*.

*Rowe* centered on the legal issue of whether a landlord had a duty to protect a decedent while she was on the premises of an office park from "criminal or tortious attacks by intruders or other third persons" and whether that duty was breached by, *inter alia*, failure of the property owner and manager to warn of prior criminal incidents that had been reported at the office park and to provide adequate security on the premises. *Id*. The Illinois Supreme Court held that the property owner and manager had no legal duty to protect tenants, including "those on the premises with the tenant's consent, from foreseeable criminal activity on the premises." *Id*. at 1364.

6

*Rowe* (again) commands dismissal here. Plaintiff avers that each of the Defendants, individually and/or collectively "owned, operated, managed, maintained, and/or controlled the mall."[2] *Am. Complaint*, ¶¶ 4, 6, 8, 10, 12, 14, 16, 18. None of the Defendants owed a duty to protect Mr. Thomas from foreseeable criminal acts of third persons committed on the premises simply because they owned, managed, etc. the Mall, however. As this Court has stated: "John's Flawless Diamonds was a tenant of the mall. Thomas was a person 'on the premises with the tenant's consent.' Under *Rowe*, therefore, defendants, the owners of the shopping mall, did not owe Thomas duty to protect against criminal attacks by third parties." *See* D.E. No. 42, *Transcript of Proceedings*, 15:4-8.

The Amended Complaint also nowhere alleges that Defendants voluntarily assumed a duty to provide security services, exercised control over the jewelry store space, or was the only party able to guard against crime. As alleged, the jewelry store undertook that responsibility by employing a security company that hired Mr. Thomas to provide store security. *Am. Complaint*, ¶ 28. Dismissal is warranted absent any duty. *Rowe*, 531 N.E.2d at 1364.

### B.  NO SPECIAL RELATIONSHIP EXISTED HERE UNDER *ROWE*

*Rowe* also commands dismissal here (again) because a duty to warn or protect against criminal conduct does not exist in the absence of a "special relationship," such as business invitor and invitee. That is the case here. *Rowe* emphasizes that the Illinois Supreme Court "has repeatedly held … the simple relationship between a landlord and a tenant, *or a landlord and those on the premises with the tenant's consent*, is not a 'special' one imposing a duty to protect against

---

[2] Allegations of mall ownership and operation are untrue as to specific Defendants. *See* Part III, *infra*. For example, Defendant River Oaks Center, LLC has previously advised the Court that it "has no affiliation with, connection to or involvement with the Mall, and specifically at all relevant times Center did not own, operate, manage, maintain and/or control the Mall as alleged in paragraph 4 in Plaintiff's Complaint. *See* Notice of Removal, D.E. No. 1, ¶ 20. *See also* Redacted Notice of Removal, D.E. 40, ¶ 20.

the criminal acts of others." *Id*. (Emphasis added.) As this Court has observed, too, "[b]ecause Thomas was a security guard for John's Flawless Diamonds, defendants were not in a special relationship with Thomas." *Id*. Ample and controlling authority supports this conclusion.

As this Court articulated, under *Rowe* and Section 344, Restatement (Second) of Torts, "if an individual is not on the land for the purpose for which it is held open to the public, in other words, if an individual is a tenant or one on the land with the tenant's consent, the landowner does not owe that individual a duty to protect against the criminal acts of third parties. *See* D.E. No. 42, *Transcript of Proceedings*, 13:13-22 (citing *Rowe,* 531 N.E.2d at 1364)). That is what Plaintiff has again alleged. *See* D.E. No. 41, ¶¶ 20-21, 28, 30-32.

Plaintiff's recycled lawsuit is not saved by repeating the failed allegation that the Mall was open to the public. *Id*. ¶ 29. This Court found *Jackson v. Shell Oil Co.*, 650 N.E. 2d 652 (Ill. Ct. App. 1995) compelling in this respect. There, a gas station attendant brought a negligence suit against Shell Oil Company ("Shell"), the owner of property where the gas station was located and where the gas station attendant was shot and wounded by an unknown assailant. *Jackson*, 650 N.E.2d. at 653. At the time, he was employed by an authorized dealer, which operated the gas station on the property. *Id*. Although Shell owned the property on which the gas station was located, it was neither the owner of the gas station nor in the possession or control of it at the time of the shooting. *Id*. Consequently, the *Jackson* court concluded that the plaintiff's "attempt to characterize his relationship with Shell Oil as one of business inviter-invitee is not persuasive" because he "was not Shell Oil's employee, and he was on the premises with the consent of [the authorized dealer], not the consent of Shell." *Id*. at 656. The failure to establish a business inviter-invitee relationship was "fatal" to the plaintiff's lawsuit in *Jackson*, as it is here.

8

As the *Jackson* court explained, the Supreme Court of Illinois and appellate courts have repeatedly held that the simple relationship between a landlord and a tenant, and a landlord and those on the premises with the tenant's consent, is not a special relationship giving rise to a duty to protect against the criminal acts of others. *Id*. This Court has ruled similarly that, "as in *Jackson*, it was not Defendants who invited Thomas onto the property. Rather, Thomas was on the property providing security for John's Flawless Diamonds, Defendants' tenant. Therefore, under Illinois law, Thomas was not in a business inviter-invitee relationship with Defendants that would give rise to a duty to protect." *See* D.E. No. 42, *Transcript of Proceedings*, 14:22-25, 15:1-8.

Under the controlling authority of *Rowe*, therefore, including Section 344, Restatement (Second) of Torts, and numerous other authorities, the Amended Complaint fails because if "no special relationship exists," (which it does not) between the parties, "dismissal [is] appropriate." *Id*. 10:14-16 (quoting *Vesely v. Armslist, LLC*, 762 F.3d 661, 665-66).

## II.  ILLINOIS' LIMITED LIABILTY COMPANY ACT BARS THIS ACTION

Because Defendants did not owe Mr. Thomas a duty to protect against the criminal acts of third parties under *Rowe* and other authorities, the Court again (*see id*. 16:9-13) does not need to reach an additional basis for dismissal—application of the Illinois Limited Liability Company Act ("Act"), 805 ILCS 180/1-1 *et seq.*. To the extent argument is required: Plaintiff has (again) stated no claim against defendant Namco Realty, LLC, specifically. Under the Act, members of limited liability companies are not liable for the alleged torts of the company of which they are a member or manager solely by reason of being or acting as a member or manager thereof:

> the obligations, and liabilities … of a limited liability company … arising in tort … are solely, the … obligations, and liabilities of the company. **A member or manager is not personally liable for a … obligation, or liability of the company solely by reason of being or acting as a member or manager**.

805 ILCS 180-10/10 ("Liability of members and managers") (Emphasis added.)

9

While Plaintiff has (again) sued several limited liability companies in their own right (in futility, as further described in Part III, below), the foregoing statutory language bars Plaintiff's attempt to impose liability against individual *members* of an LLC, which are themselves limited liability companies, specifically Namco Realty, LLC.

Here, Namco Realty, LLC is a member of defendant River Oaks Realty, LLC (*see* Redacted Notice of Removal, D.E. No. 40, ¶ 14). Plaintiff alleges that Namco Realty, LLC "owned, operated, managed, maintained, and/or controlled the Mall" (*Am. Complaint*, ¶ 18) and that it "by and through its employees and/or agents was guilty of one or more of [several] negligent acts and/or omissions" (*id*. ¶ 39). These allegations are insufficient to state a claim, however, as they fail to assert any matters against Namco Realty, LLC that are independent or distinguishable from the allegations against the LLCs of which it is a member, specifically River Oaks Realty, LLC.

The Amended Complaint also fails to present a single allegation of Namco Realty, LLC's *own* wrongful acts or omissions giving rise to the felony-murder that occurred here. For example, the Complaint is devoid of any factual allegation that Namco Realty, LLC acted independently of, or in furtherance, of any act or omission by the LLC of which it is a member that caused or contributed to the events alleged. The lack of such allegations is fatal to the Amended Complaint and offers a sharp contrast to situations in which courts might impose liability on a member of an LLC do not exist here. *See*, *e.g.*, *Fifth Third Mortgage Co. v. Kaufman*, 934 F.3d 585 (7th Cir. 2019) (holding that an attorney who was the owner of a title company used for several closings was not shielded from liability where he personally directed employees to conceal a fraud for his own personal gain).

10

Plaintiff latest pleading also is legally insufficient in that it fails again to allege or indicate that Namco Realty, LLC consented (in writing) or otherwise assumed the liability of the LLC of which it is a member—the only circumstances in which Namco Realty, LLC could be liable under Act. *See* 805 ILCS 180-10/10(d)(1)-(2) (establishing that "members of a limited liability company are liable in their capacity as members for … obligations, or liabilities of the company if: (1) a provision to that effect is contained in the articles of organization; and (2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision."). *See also In Re Baker*, 2022 WL 677455 (C.D. Ill. Bankr. 2022) ("Members and managers of limited liability companies are only liable for debts of the company if they have affirmatively accepted liability or if the limited liability veil of the company is pierced. Here, there is no allegation that the Debtor affirmatively agreed to be liable for [the LLC's] debts.").

In all, Plaintiff's entire theory of liability against Namco Realty, LLC is derivative in nature and thus fails to state a claim upon which relief can be granted. Plaintiff has sued Namco Realty, LLC only by virtue of its status as a member of an LLC rather than as an active participant in any tortious action (or inaction) by the LLC of which it is a member. *See* 805 ILCS 180/5-1 ("A limited liability company is a legal entity distinct from its members."). Because this is precisely the scenario that the Illinois Legislature had in mind when it codified the statutory shield for LLC members under the Act, and because Plaintiff has alleged no reason, and none of the traditional reasons (*e.g.*, alter ego, fraud, undercapitalization, etc.) typically presented for piercing the corporate veil of the limited liability company to reach its members, this lawsuit should be dismissed as to Namco Realty, LLC.

### III. SEVERAL DEFENDANTS HAVE NO CONNECTION TO THE MALL AS A MATTER OF FACT AND SO NO LIABILITY AS A MATTER OF LAW

Finally, Plaintiff's allegation that three of Defendants—CH Capital Group, LLC, Mason Asset Management, Inc., and Namco Realty, LLC—"owned, operated, managed, maintained, and/or controlled the Mall," *Am. Complaint*, ¶¶ 14, 16, 18, is verifiably false.

Here again, Plaintiff's Amended Complaint presents (literally) nothing new, and as stated in Defendants' original motion to dismiss Plaintiff's original complaint, Defendants again provide an affidavit made on personal knowledge and under penalty of perjury by Joseph Loloi, General Counsel of Namdar Realty Group. There, he testifies that above-referenced Defendants have not owned, operated managed, maintained, controlled, leased, and/or possessed the Mall. *See* Exhibit B, attached hereto, at ¶¶ 3-4.[3] CH Capital Group, LLC is in the investment business, but does not have any ownership interest in the Mall. *Id*. ¶ 5. Mason Asset Management, Inc. is a real estate broker with no ownership interest in or management authority over property, including the Mall. *Id*. ¶ 6. Namco Realty, LLC, too, is solely a member of defendant River Oaks Realty, LLC, but otherwise has no connection to the Mall. *Id*. ¶ 7.

Lacking any connection to the Mall as a matter of undisputed fact, these Defendants owe no duty to Plaintiff as a matter of law, and this lawsuit should be dismissed as against them, a matter of law. *E.g.*, *Simon Property Group, Inc.*, 2022 WL 1266433, at *1 (granting summary judgment in a premises liability suit where defendant had no ownership or control over a mall).

---

[3] The Court may consider Mr. Loloi's affidavit because the information raised therein relates to the sufficiency of Plaintiff's central allegation about ownership, operation, management, maintenance, control, lease, and/or possession of the Mall. *E.g.*, *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993). Pursuant to Fed. R. Civ. P. 12(d), the Court may receive this extrinsic evidence on a 12(b)(6) motion to dismiss and convert the motion into a rule 56 motion for summary judgment. *E.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

**CONCLUSION**

The Amended Complaint is redundant of claims already comprehensively briefed, conclusively decided, and previously dismissed. Plaintiff has again established no duty or exception under *Rowe* nor a viable suit under Illinois corporate law, and dismissal is warranted, but now, having confirmed its futility, with prejudice.

**WHEREFORE**, the Defendants move for entry of an order dismissing this lawsuit under Fed. R. Civ. P. 12(b)(6), with prejudice, and granting such other and further relief deemed necessary and just.

TRESSLER LLP

/s/ *Timothy M. Ravich*

Attorneys for the Defendants,
Donald G. Machalinski, Esq.
Linda J. Schneider, Esq.
Timothy M. Ravich, Esq.
Tressler LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606-6399
Telephone: 312.627.4000
dmachalinski@tresslerllp.com
lschneider@tresslerllp.com
travich@tresslerllp.com